FREDERIC S. MARSELL, Appellant, v. SAMUEL EVANS MAIRES, Respondent.

Second Department, November 24, 1922.

**Attorney and client — contract for compensation — validity — agreement by one attorney in consideration of division of fees to assist in election of trustees in bankruptcy who would appoint other attorney as their attorney is against public policy, void and unenforcible.**

An agreement between attorneys for the division of fees is against public policy, void and unenforcible, which provides that one attorney will assist the other in electing and having appointed certain trustees of a bankrupt corporation and will aid in procuring the appointment and election of the other attorney by said trustees to act for them in the bankruptcy proceedings, and will assist in all matters of litigation concerning the bankrupt estate, in consideration of a division of the fees received by said attorney as the attorney for the trustees in bankruptcy between the parties to the agreement.

APPEAL by the plaintiff, Frederic S. Marsell, from an order of the Supreme Court, made at the Kings Special Term and entered in the office of the clerk of the county of Queens on the 3d day of March, 1922, granting defendant's motion for judgment on the pleadings consisting of a complaint and an answer thereto, and also from a judgment of the Supreme Court, entered in said clerk's office on the 8th day of March, 1922, pursuant to said order, dismissing the complaint.

*Luke D. Stapleton* [*Herbert G. McLear* with him on the brief], for the appellant.

*Harrington Putnam* [*J. Hunter Lack* with him on the brief], for the respondent.

YOUNG, J.:

The complaint alleges that plaintiff is an attorney admitted to practice in the New York State courts, and that defendant also is an attorney admitted to practice in said courts and also in the United States District Court for the Eastern District of New York; that on January 23, 1917, an involuntary petition in bankruptcy was filed against the Franklin Brewing Company, a New York corporation, and on March fifth said company was adjudicated a bankrupt; that prior to January 23, 1917, plaintiff was attorney and counsel for said company and was familiar with its affairs and the names of all its creditors. The complaint then contains the following allegation: " That thereafter the defendant herein requested plaintiff to assist him in electing and having appointed certain trustees of the said bankrupt corporation, and to thereafter aid in procuring the appointment of the defendant as attorney for the said trustees and to assist the said defendant in the event of his appointment as attorney for the said trustees in all matters of litigation which he might be called upon to do by the said defendant, and said defendant agreed with plaintiff herein that in the event of such appointment as aforesaid, as attorney for the said trustees, that he would pay to the plaintiff herein one-third of any and all fees and allowances that might be awarded to and received by him for his services as attorney for the said trustees."

The complaint further alleges that plaintiff used his efforts and assisted in procuring the election and appointment of certain trustees, one of whom was defendant's son, and that he urged upon such trustees the appointment of defendant as their attorney, and that defendant was duly elected and appointed such attorney; that thereafter defendant performed various services for said trustees, and plaintiff, at defendant's solicitation and request, performed services and carried out every part of the agreement set forth in the complaint, and that on July 29, 1921, defendant was allowed and paid $50,000 for his services as attorney for said trustees, and that by reason thereof, plaintiff was entitled to receive from defendant $16,666.66, no part of which has been paid, although demanded.

The answer denies the material allegation of the complaint, and sets up various defenses as to the legality of the contract.

Second Department, November, 1922.                    [Vol. 203

The defendant then moved for judgment on the pleadings, dismissing plaintiff's complaint on the ground that it did not state facts sufficient to constitute a cause of action, and the court at Special Term made the order and judgment appealed from.

The learned justice at Special Term wrote an opinion, stating the particular grounds for his decision, in which he states as follows: " While section 274, subdivision 2, of the Penal Law of this State does not prohibit an agreement between attorneys and counselors, or either, to divide between them the compensation to be received, it is unlawful for an attorney to enter into an agreement with another attorney having for its purpose the securing of the appointment of any public officer who should appoint as attorney one who would divide his fees with the attorney aiding in or securing the appointment of the public officer. Such an agreement, either executed or executory, is illegal, void and non-enforcible, because it is contrary to public policy, good morals and is unprofessional and subversive of the due administration of justice, and no recovery can be had upon the basis of such a contract. All parts of the alleged agreement are alike tainted with illegality and no separation can be made by which one part can be held to be good and the rest bad. Hence the entire contract, as alleged in the complaint in this action, if it were in fact entered into, would be *malum in se* and non-enforcible in law."

The appellant urges as grounds for reversal that the contract pleaded is not champertous; that a trustee in bankruptcy is not a public officer; that the employment by the attorney of trustees in bankruptcy of an attorney who acted as attorney of the bankrupt prior to its adjudication is not improper, and that the contract alleged in the complaint is not illegal.

On the other hand, respondent insists that the contract in question, besides being contrary to public policy, offends the statutes, because trustees in bankruptcy are United States officials, and schemes to control the election thereof are forbidden; their legal counsel is appointed by the court, and is charged with high responsibilities; secret agreements to put a person into such office are against the Bankruptcy Act; agreements to control election of a trustee are also prohibited, and the entire scheme is indivisible and void *in toto;* is against the common law, and now prohibited by the Penal Law; and is, therefore, void and non-enforcible; and further, that division of fees by the trustees' attorney is a disloyalty to the client.

It does not seem to me of very great importance whether trustees in bankruptcy are or are not public officers. It is quite true that

they are not public officers in the limited sense in which that term is used in the Constitution and certain statutes. But the office is created by the Bankruptcy Act and the trustees are elected by the creditors and are subject to the approval and are under the control of the court. It is also true that they serve the interests of the creditors of the particular estate for which they are elected. In a broad sense, the public is interested in securing the election of properly qualified trustees so that the due and proper administration of each estate shall be had solely for the benefit of those interested, and free from every other consideration. That this is the policy of the law is, I think, beyond dispute. We must, therefore, test the agreement between the parties here by determining whether or not it is consistent with that policy.

Clearly, the purpose of the agreement was to procure the election of certain trustees, whose primary and controlling qualification was that, when elected, they would appoint defendant their attorney to conduct the litigation of the estate. Such a test of fitness for the office of trustee in bankruptcy was never contemplated or intended by the statute, and it is apparent that such a practice, if countenanced by the courts, will lead to grave danger in the administration of bankrupt estates. Of course, it is not pretended that such a test is proper or that an appointment obtained solely upon it could be upheld. But if I correctly understand appellant's argument, it is that an agreement to procure the election of trustees who will appoint the attorney in question is not invalid in the absence of proof that improper influences were exerted to procure their election. The agreement in question, however, if at all effectual, tested the fitness of the trustees, whose election was to be procured, not by their qualifications as being men of intelligence, honesty and integrity, who would act solely in the interests of the creditors by whom they were elected, but the paramount and controlling consideration was that such trustees, and only such, would be elected, who would appoint the defendant their attorney. Otherwise, the agreement was meaningless. Plaintiff's compensation for the services to be rendered depended upon the accomplishment of that result. In other words, in order to earn such compensation, he must obtain two things: (1) Election of trustees who would appoint defendant their attorney; (2) defendant's appointment by them as such attorney. That was the essence of the contract, and, so far as its real purpose was concerned, nothing else was of the slightest importance. Persons illiterate, dishonest, open to sinister influences or otherwise, might be elected pursuant to the agreement sued on, and if they fulfilled the requirements of that agreement by appointing defendant their attorney,

plaintiff's compensation was earned, or at least, the contingency which stood in the way of his earning such compensation was removed.

The probable effect upon the administration of the Bankruptcy Law of such an agreement, thus analyzed, convinces me that it is an evil thing. It is not enough, in my opinion, that such an agreement may be carried out innocently and in good faith, accomplish its purpose, and also secure properly qualified trustees and an able and conscientious attorney, to act for them. The vice lies in the manifold possibilities for evil. A judge may, if permitted, hear his kinsman's case and decide it strictly according to fact and law, and without partiality or favor, but the law forbids such practice because it is fraught with danger to the administration of justice. So in the case at bar, we may grant the fitness and good faith of the parties, but we cannot permit to be done that which, if established as legal, may and probably would lead to the utter subversion of the purpose and intent of the Bankruptcy Act.

In *Veazey* v. *Allen* (173 N. Y. 359, 368) our Court of Appeals defined public policy in the following language: " This contract is assailed on the ground of public policy. Lord Brougham defined public policy as ' that principle of the law which holds that no subject can lawfully do that which has a tendency to be injurious to the public or against the public good, which may be termed the policy of the law, or public policy in relation to the administration of the law.' In many of its aspects the term ' public policy ' is but another name for public sentiment and, as that is often transitory or shifting, it lacks the permanency upon which fixed principles of law are, or should be, based. There are, however, other phases of public policy which are as enduring and immutable as the law of gravity. One of them is that, as applied to the law of contracts, courts of justice will never recognize or uphold any transaction which in its object, operation or tendency is calculated to be prejudicial to the public welfare. That sound morality and civic honesty are corner stones of the social edifice is a truism which needs no re-enforcement by argument. It may, therefore, be taken for granted that whenever our courts are called upon to scrutinize a contract which is clearly repugnant to sound morality and civic honesty, they need not look long for a well-fitting definition of public policy, nor hesitate in its practical application to the law of contracts."

Further discussion of the question seems unnecessary. The agreement in question clearly offends public policy, as thus defined. As it is an entire agreement, all parts of which are dependent

upon an illegal consideration, it is, therefore, void and cannot be enforced.

The judgment and order should be affirmed, with costs.

Present — BLACKMAR, P. J., KELLY, MANNING, KELBY and YOUNG, JJ.

Judgment and order unanimously affirmed, with costs.